IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CASSANDRA BURDETT,<br><br>      Plaintiff,<br><br>  v.<br><br>MATSON NAVIGATION COMPANY, INC.,<br><br>      Defendant. | Civ. No. 13-00703 ACK-KSC |

**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE**

For the following reasons, the Court hereby GRANTS Matson's Motion for Partial Summary Judgment, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS IN PART AND DENIES IN PART Matson's Motion to Strike.

**FACTUAL BACKGROUND**[1]

This matter arises under admiralty law. Plaintiff Cassandra Burdett ("Plaintiff") claims she was injured while working as a seaman aboard the vessel M/V Manoa. (Compl. ¶ 5.) Defendant Matson Navigation Company, Inc. ("Matson") is the owner and operator of the M/V Manoa. (Doc. No. 10 (Answer) ¶ 3.)

On or about April 26, 2012, while working in the engine

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

room of the M/V Manoa, Plaintiff was walking up the ladder well in the lower engine room when a portable air blower weighing approximately 30 pounds fell over the rail from two levels above and struck her on the head. (Id. ¶ 5; Pl.'s CSF ¶ 5.)

At the time of the incident, on the level above Plaintiff, other members of the crew were conducting a piston overhaul, or removing and replacing a piston using a crane. (Def.'s CSF in Supp. of Mot., Ex. D (Atwood Depo.) at 47; Pl.'s CSF in Supp. of Mot., Ex. D (Matthews Depo.) at 26.) Dominic Matthews, the Junior Engineer on the M/V Manoa, testified that he was helping to guide the piston down a walkway, and that he moved the blower out of the way to avoid any of the crewmembers tripping on it as they were walking backwards guiding the piston. (Def.'s CSF in Supp. of Mot., Ex. E (Matthews Depo.) at 25-27, 46; Pl.'s CSF in Supp. of Mot., Ex. D at 25-28.) Matthews testified that ten to twenty seconds later the blower fell over the rail and struck Plaintiff on the head. (Pl.'s CSF in Supp. of Mot., Ex. D at 28-29; Pl.'s CSF in Opp'n, Ex. 2.)

**PROCEDURAL BACKGROUND**

On December 19, 2013, Plaintiff filed her Complaint for Personal Injury Damages against Matson. (Doc. No. 1.) In her Complaint, Plaintiff asserts claims for negligence, unseaworthiness, and maintenance and cure. (Id. ¶¶ 7-11.) Plaintiff seeks a judgment against Matson in the amount of seven

million dollars in compensatory damages, maintenance and cure, and other fees and costs. (Id. at 4.)

Matson filed its Answer on February 21, 2014. (Doc. No. 10.) On October 16, 2014, Plaintiff filed her Motion for Summary Judgment, supported by a concise statement of facts and a number of exhibits. (Doc. No. 82.) On October 22, 2014, Matson filed its Motion for Partial Summary Judgment, also supported by a concise statement of facts and several exhibits. (Doc. Nos. 88 & 89.) The parties filed their memoranda in opposition, both supported by concise statements of fact, on January 5, 2015. (Doc. Nos. 121, 122, 125, 126.) The parties filed their replies on January 13, 2015.[2/] (Doc. Nos. 138, 140.) A hearing on the motions was held

---

[2/] On January 20, 2015, Matson filed its Motion to Strike Plaintiff's Concise Statement of Facts in Support of Plaintiff's Reply and the New Evidence Submitted Therewith. (Doc. No. 144.) On January 22, 2015, Plaintiff filed a response to the Motion to Strike. (Doc. No. 148.) As Matson points out, in addition to her reply, Plaintiff filed a purported "Concise Statement in Support of Reply" along with numerous exhibits. The Local Rules neither contemplate nor allow such filings. Indeed, Local Rule 7.4 expressly states that a reply "must respond only to arguments raised in the opposition," and that "[a]ny argument raised for the first time in the reply shall be disregarded." Further, Local Rule 56.1(h) specifically states that "[a]ffidavits or declarations setting forth facts and/or authenticating exhibits, as well as exhibits themselves, shall only be attached to the concise statement. Supplemental affidavits and declarations may only be submitted with leave of court." Plaintiff did not seek or receive permission from the Court to file additional affidavits, declarations, or exhibits outside of those attached to her concise statements of facts in support of her motion and in opposition to Matson's motion. Thus, Plaintiff's Concise Statement of Facts in Support of Reply, as well as the additional exhibits attached to it, were all filed in clear violation of the

(continued...)

on January 27, 2015.

**STANDARD**

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or

---

[2]/(...continued)
Local Rules. It appears, however, that the only exhibits attached to Plaintiff's Reply that were not included in her previous filings are Exhibits 4 and 11, the depositions of Jeffrey Booth and Captain Thomas Apperson, respectively. Because the other exhibits attached to Plaintiff's Reply were previously filed and provided to Matson, the Court finds no prejudice to Matson in permitting them to be re-filed. The Motion to Strike is therefore DENIED as to those exhibits. As to Exhibit 11, the deposition of Captain Apperson, during the hearing on the instant motions the Court granted Matson leave to present to the Court any additional portions of Apperson's deposition Matson believed were relevant to rebut Plaintiff's Exhibit 11. Plaintiff's counsel did not object to the Court viewing this additional evidence, and Matson timely filed the deposition testimony on January 28, 2015. (Doc. No. 153.) Thus, there is no prejudice to either party in the Court's consideration of Plaintiff's Exhibit 11. The Motion to Strike is therefore DENIED as to that exhibit. Finally, as to Exhibit 4, the deposition testimony of Mr. Booth, the Court GRANTS Matson's Motion to Strike as to this exhibit. Matson did not have an opportunity to respond to this new evidence and will therefore be prejudiced should Plaintiff be permitted to file it with her Reply. On January 28, 2015, after the hearing on the instant motions, Plaintiff made a supplemental filing of a verified transcript of the Booth deposition. (Doc. No. 154.) The Court will therefore strike that document as well. In sum, the Court will strike Exhibit 4 to Plaintiff's Concise Statement of Facts in Support of Plaintiff's Reply, along with any portions of Plaintiff's Concise Statement of Facts in Support of Plaintiff's Reply that rely upon that exhibit. The Court also strikes in its entirety Plaintiff's January 28, 2015 filing, (Doc. No. 154.) Matson's Motion to Strike is therefore GRANTED IN PART AND DENIED IN PART.

whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 587.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 585. "[T]he requirement is that there be no genuine issue of material fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 247–48 (emphasis in original).

**DISCUSSION**

The instant motions both address Plaintiff's claim of unseaworthiness; both parties argue that they are entitled to judgment as a matter of law on Plaintiff's claim that her injuries were the result of the M/V Manoa's unseaworthy condition. In addition, Plaintiff seeks judgment as a matter of law that she was not contributorily negligent. The Court addresses each issue in turn.

**I. Unseaworthiness**

The admiralty doctrine of unseaworthiness is a form of strict liability that requires the owner of a vessel to ensure that a vessel and its appurtenant equipment and appliances are "reasonably fit for her intended service." Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499 (1971); see also Seas Shipping Co. v. Sieracki, 328 U.S. 85, 90 (1946). "A shipowner has an absolute duty to furnish a seaworthy ship." Ribitzki v. Canmar Reading & Bates, Ltd. P'ship, 111 F.3d 658, 664 (9th Cir. 1997), as amended on denial of reh'g and reh'g en banc (June 5, 1997), amended on reh'g en banc sub nom. Ribitzki v. Canmar Reading & Bates, Ltd., 1997 WL 34580081 (9th Cir. June 5, 1997) (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960)). As such, "a shipowner's actual or constructive knowledge of an unseaworthy condition is not essential to its liability." Id.

To establish a claim for unseaworthiness, a plaintiff

6

must demonstrate that: "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries." Id. at 664-65.

Here, as to the first two prongs of the test, they appear to be satisfied. Matson does not dispute that Plaintiff was a seaman at the time she was injured, and thus entitled to the warranty of seaworthiness. (See Pl.'s CSF in Supp. of Mot. ¶¶ 1,4; Def.'s CSF in Opp'n ¶¶ 1, 4.) The parties likewise do not appear to dispute that Plaintiff was injured when a portable air blower fell and hit her on the head, and that the air blower constituted "a piece of the ship's equipment or an appurtenant appliance." (Pl.'s CSF in Supp. of Mot. ¶ 5; Def.'s CSF in Opp'n at ¶ 5.)

As to the third prong of the test, Plaintiff argues that the M/V Manoa was not reasonably fit for its intended use because Matson "fail[ed] to require the crew to properly secure equipment aboard the vessel in order to promote safe and seaworthy conditions." (Pl.'s Mot. at 7.) Plaintiff asserts that the placement of the air blower too close to the ladder well and the failure to properly secure it rendered the vessel unseaworthy. (Id.) Matson counters that Plaintiff has failed to

identify any evidence to support her claim that there was an unsafe condition or practice on the M/V Manoa. (Def.'s Mot. at 9.) Rather, Matson argues, Plaintiff's injuries were, at the most, the possible result of the isolated negligence of a crewmember and, thus, cannot support a claim for breach of the warranty of seaworthiness. (Id.)

In order to prevail on a claim for unseaworthiness, the plaintiff must show that the vessel owner has failed to supply a vessel or vessel appurtenances that are reasonably fit for their intended use. Usner, 400 U.S. at 499. Apart from the physical condition of the vessel, an unsafe method of work can render a vessel unseaworthy. Id. However, the Supreme Court has stated that an "isolated, personal negligent act" is not sufficient to give rise to a claim for unseaworthiness because that would "subvert the fundamental distinction between unseaworthiness and negligence." Id. at 500. Thus, a crewmember's "single and wholly unforeseeable" act of negligence is not sufficient to give rise to liability of the shipowner for unseaworthiness. Id. Unseaworthiness is a condition which must be established with more than a single act. Id. at 498, 500.

Here, there is no dispute as to the material facts relevant to Plaintiff's unseaworthiness claim. The parties agree that Plaintiff was working in the engine room at the time of the accident, that Mr. Matthews moved the air blower out of the way

8

of the crewmembers working above and placed it on the side of the walkway, and that approximately ten to twenty seconds later the air blower fell over the side of the walkway, down the ladder well, and struck Plaintiff on the head. (See Pl.'s CSF in Opp'n ¶ 3; Def.'s CSF in Opp'n ¶¶ 20-23.) The parties do, however, dispute whether Mr. Matthews's act of placing the air blower on the side of the walkway and not tying it down constituted a single negligent act, or gave rise to a condition of unseaworthiness on the M/V Manoa. The Court concludes that it was the former.

In Usner v. Luckenbach Overseas Corp., the United States Supreme Court addressed the question of whether a longshoreman injured when a fellow longshoreman lowered a cargo sling too far and too fast could bring a claim for unseaworthiness against his employer.[3] The Usner Court answered in the negative, distinguishing between a "single and wholly unforeseeable act of negligence" and "the condition of the ship." 400 U.S. at 500. The Court noted that "[n]either before nor after [the sling accident] was any difficulty experienced with the

---

[3] The Usner Court noted the existence of a circuit split on the issue of whether so-called "instant unseaworthiness" resulting from an act of negligence on the part of a crewmember is a basis for recovery under the maritime doctrine of unseaworthiness. Id. at 497 n.2 (citing, e.g., Tim v. American President Lines, Ltd., 409 F.2d 385, 390-92 (9th Cir. 1969) (rejecting "instant unseaworthiness" and requiring that unseaworthiness be based upon "an existing condition")).

9

winch, boom, fall, sling, or any other equipment or appurtenance of the ship or her cargo." Id. at 495. The Court thus concluded that it was the "isolated, personal negligent act of the petitioner's fellow longshoreman," rather than a condition of the ship, that caused the plaintiff's injuries. Id. at 500. Thus, the plaintiff could not prevail on a claim for unseaworthiness.

Courts subsequently applying Usner in assessing claims for unseaworthiness have therefore drawn a distinction between a single negligent act, and a series of negligent acts "of such a character or that continue for such a length of time that they become related to the status of the vessel." Robinson v. Showa Kaiun K.K., 451 F.2d 688, 690 (5th Cir. 1971); see also, e.g., Ryan v. Pac. Coast Shipping Co., Liberia, 509 F.2d 1054, 1057 n.6 (9th Cir. 1975) ("[A] condition of unseaworthiness must consist of more than one act and last longer than a few seconds or minutes."); Edynak v. Atlantic Shippin Inc. Cie. Chambon Maclovia S.A., 562 F.2d 215, 224 (3rd Cir. 1977) ("Although the difference Usner draws between an act and a condition is difficult to apply in practice, we can make two explanatory observations. First, the distinction is in part temporal: an act occurs instantaneously, whereas there must be some period of time during which a condition exists. Second, a condition necessarily consists of more than one act." (internal citations omitted)); Kyzar v. Vale Do Ri Doce Navegacai, S.A., 464 F.2d 285, 290-91 (5th Cir. 1972)

10

(same).

Here, Plaintiff has produced no evidence of previous accidents involving portable air blowers either being placed too close to ladder wells, or causing injury because they are not tied down.[4/] (See generally Pl.'s CSF in Supp. of Mot.; Pl.'s CSF in Opp'n.) Nor has she identified any evidence suggesting that crewmembers had a general practice of placing air blowers too close to ladder wells or failing to tie them down. (Id.) Indeed, Plaintiff herself admitted in deposition testimony that she is unaware of any prior incidents involving air blowers. (See Def.'s CSF in Opp'n, Ex. A (Plaintiff's Depo.) at 60:2-10.) Thus, Plaintiff has failed to identify any evidence to suggest that the accident that caused her injury was anything more than a single, isolated instance of an unsecured air blower being placed too close to a ladder well. See Usner, 400, U.S. 495, 500; see also

---

[4/] The Court notes that Plaintiff's filings on the instant motions appear to assert that unseaworthiness resulted from both the placement of the air blower and the fact that it was not tied down; however, during the hearing Plaintiff's counsel focused only on the placement of the air blower. When the Court questioned Matson's counsel as to the tie-down issue, he responded that, because the failure to tie down the air blower was a single negligent act and there is no evidence of other similar incidents, it did not give rise to an unseaworthy condition. Notwithstanding this exchange, during his rebuttal argument Plaintiff's counsel again entirely failed to address the claim regarding the failure to tie down the air blower. It is unclear to the Court whether Plaintiff is abandoning this theory; however, even assuming Plaintiff is still asserting an unseaworthiness claim based upon the failure to tie down the air blower (in addition to her claim regarding its placement), for the reasons discussed herein, such a claim must fail.

11

Robinson, 451 F.2d at 690 ("If the negligent act . . . is not part of any congeries of negligent acts connected to the status of the vessel or to its loading but is rather an isolated "instantaneous" act of negligence within an otherwise seaworthy method of loading on an otherwise seaworthy vessel, then that one act of negligence . . . will not render the vessel unseaworthy."); Ryan, 509 F.2d at 1056 (finding no unseaworthy condition where the action that caused the plaintiff's injury "had not occurred before and did not occur again" and, thus, could not be said to constitute a condition of the ship).[5]

Further, the facts suggest that the air blower was left

---

[5] Plaintiff quotes Robbins v. Aleutian Queen Seafood, Inc., 15 F.3d 1089 (9th Cir. 1994) (unpublished mem. disp.), for the proposition that "liability attaches if an act leaves the vessel in an unsafe condition subsequently resulting in injury but does not if the act and resulting injury are simultaneous." (Pl.'s Reply at 9 (quoting Robbins, 15 F.3d at 1089). Further, at the hearing on the instant motions, Plaintiff's counsel argued that Robbins, which was issued in 1994, represented a modification of the unseaworthiness analysis articulated by the Ninth Circuit in Ryan in 1975. As an initial matter, the Court notes that Robbins is an unpublished disposition issued prior to January 1, 2007, which may not be cited as precedent. See Fed. R. Ap. P. 36-3. Even if Robbins had precedential value, however, it is not contrary to the Ninth Circuit's decision in Ryan. Directly after the language Plaintiff quotes, the Robbins court continued its analysis by noting that there was no evidence to support a "factual finding that it was the established practice" of crane operators on the ship to misuse the crane. 15 F.3d at 1089. Thus, the Robbins court recognized that, regardless of whether the injury was instantaneous or happened shortly after the negligent act, if there is no evidence of an established practice of negligence (in the form, for example, of prior similar accidents), there is no condition of unseaworthiness. Id. Plaintiff's arguments based on Robbins are therefore unpersuasive.

in place for only approximately ten to twenty seconds after Mr. Matthews placed it on the side of the walkway, before it fell. (Def.'s CSF in Opp'n, Ex. C (Matthews Depo.) at 28:8-13; Pl.'s CSF in Opp'n, Ex. 2 (Matthews Decl.).) Particularly in light of the fact that no similar accidents had occurred previously, it defies logic to conclude that the air blower's placement (and the fact that it was not tied down) became a condition of the ship during the mere ten to twenty seconds that it stayed in place before falling. See, e.g., Ryan, 509 F.2d at 1057 n.6 ("The very words 'unseaworthy condition' suggest that there must be some period of time during which the condition exists. For example, in cases involving injuries sustained by a longshoreman when part of a ship's cargo has fallen on him, courts have generally refused to allow recovery if the accident occurred soon after the cargo was stowed." (citing cases)); Smith v. Olsen & Ugelstad, 324 F. Supp. 578 (D. Mich. 1971), affd., 459 F.2d 915 (6th Cir.), cert. denied, 409 U.S. 1040 (1972) (finding no unseaworthy condition where the negligent unloading of crates in the ship's hull left a crate in an unsteady position for approximately thirty seconds before it fell and injured the plaintiff).

Mr. Matthews's act of setting down the unsecured air blower and the blower's subsequent fall appear to have both been part of the same single incident that gave rise to Plaintiff's alleged injuries; in other words, Plaintiff's injuries were the

almost immediate consequence of Mr. Matthews's act. (See Def.'s CSF in Opp'n, Ex. C at 28:8-13; Pl.'s CSF in Opp'n, Ex. 2.) In such a circumstance, it cannot be said that the positioning of the unsecured air blower constituted a condition of the ship. See Ryan, 509 F.2d at 1057 ("To convert this single negligent act into an unseaworthy condition is to play a game with words.").

Unseaworthiness is a condition, and must be established with more than a single act. Usner, 400 U.S. at 498, 500; Ryan, 509 F.2d at 1057. After a careful review of all of the evidence properly before it, the Court must conclude that Plaintiff has failed to demonstrate that her injuries arose from an unseaworthy condition, rather than a single, isolated negligent act.[6] While the accident is indeed regrettable, it cannot be said to have been caused by a condition of the ship or her appurtenances. The Court therefore DENIES Plaintiff's Motion for Summary Judgment as to her unseaworthiness claim, and GRANTS Matson's Motion for Partial Summary Judgment.

## II. Contributory Negligence

Plaintiff also seeks judgment as a matter of law that she was not contributorily negligent in the instant case.

---

[6] The Court notes that, in so holding, it expresses no opinion as to whether Mr. Matthews did, in fact, act negligently. Any such allegations of negligence are not before the Court on the instant motions. The Court merely concludes that, to the extent any negligence was involved in Plaintiff's accident, it was an isolated incident, and did not constitute a condition of the ship itself.

14

Maritime law has long applied the rule of comparative fault in a seaman's unseaworthiness action against a shipowner. <u>Knight v. Alaska Trawl Fisheries, Inc.</u>, 154 F.3d 1042, 1047 (9th Cir. 1998), <u>as amended</u> (Oct. 14, 1998) (citing <u>Pope & Talbot, Inc. v. Hawn</u>, 346 U.S. 406, 409 (1953)). Contributory negligence is not a complete defense to common law admiralty claims, but is a factor to be taken into consideration in mitigation of damages. <u>Id.</u> Contributory negligence will mitigate damages when a seaman is injured if "alternative courses of action are available to the injured party, and he chooses the unreasonable course." <u>Simeonoff v. Hiner</u>, 249 F.3d 883, 888-89 (9th Cir. 2001) (internal quotation marks and citations omitted); <u>see also</u> <u>Vacuum Oil Co. v. Smith</u>, 305 U.S. 424, 432-33 (1939) (contributory negligence is proper if a seaman "knowingly failed to choose an available safe method of doing his [or her] work").

In support of her contention that there is no question of fact as to contributory negligence, Plaintiff points to the following evidence: (1) the deposition testimony of Vincent Atwood, chief engineer on the M/V Manoa, that Plaintiff was "doing exactly what she was supposed to be doing" at the time of the accident, (Pl.'s CSF in Supp. of Mot., Ex. E (Atwood Depo.) at 90); (2) Plaintiff's testimony that Matson only requires employees to wear hard hats while they are on deck. (Pl.'s CSF in Supp. of Mot., Ex. B (Plaintiff's Depo.) at 61); and (3) the

statements in Matson's Personnel Injury and Root Cause Checklist, which was completed and signed by the captain of the ship, Captain Apperson. (Pl.'s CSF in Opp'n, Ex. 7.)

Matson counters that Mr. Atwood's testimony is insufficient because he was not present at the scene and thus did not witness the accident, and that Plaintiff cannot rely on her own self-serving testimony to support a finding that she was not contributorily negligent. (Def.'s Opp'n at 14-15.) Moreover, Matson asserts, just because hard hats were not required does not mean that Plaintiff was not negligent in failing to wear one as she was climbing out of the engine room while a piston removal was taking place above her. (Id. at 15-16.)

Although it is an extremely close call, on the record before it, the Court cannot conclude as a matter of law that Plaintiff was or was not contributorily negligent. See, e.g., Flying Diamond Corp. v. Pennaluna & Co., Inc., 586 F.2d 707, 713 (9th Cir. 1978) ("[Q]uestions of negligence are usually reserved for the factfinder[.]"). Contributory negligence is measured by what a reasonable person would have done under similar circumstances. Simeonoff, 249 F.3d at 889. Here, there is some evidence indicating that Plaintiff was acting as a reasonable person would when working in the engine room of a vessel. Mr. Atwood, after reviewing video footage of the accident, stated that he did not "come to any conclusions where [he] faulted Ms.

16

Burdett with doing anything inappropriately," and that she was "doing exactly what she was supposed to be doing." (Pl.'s CSF in Supp. of Mot., Ex. E (Atwood Depo.) at 90.) Moreover, Matson's own Personnel Injury and Root Cause Checklist states that the "operator error" or "human factor" that caused the accident "would appear to not be on the part of the injured party, but rather attributed to the crew member that placed the blower too close to the edge of the platform." (Pl.'s CSF in Opp'n, Ex. 7 at 2.) It also states that Plaintiff was not required to be wearing protective equipment at the time of the accident.[7] (Id. at 1.)

On the other hand, as Matson points out, there is some evidence that a reasonable person in Plaintiff's circumstance would have worn a hard had. While the parties do not dispute that Plaintiff was not required to wear a hard hat while working in the engine room, Plaintiff did testify that hard hats were available to her, that she was allowed to use them if she wanted to, and that she knows that the piston removal process is "difficult," requires the use of a "little crane," and "takes a number of people." (Def.'s CSF in Opp'n, Ex. A (Plaintiff's Depo) at 61, 63, 89.) Moreover, Captain Apperson testified that, while the "loss of situational awareness" leading to the air blower

---

[7] This corroborates Plaintiff's own deposition testimony that crewmembers were not required to wear hard hats while working in the engine room. (See Pl.'s CSF in Supp. of Mot., Ex. B (Plaintiff's Depo.) at 61.)

17

falling was not attributable to Plaintiff, "walking underneath work underway is not good." (Doc. No. 153 (Apperson Depo.) at 42-43.) He also stated that hard hats were available in the engine room "for use if they want to use a hard[ ]hat. They're hazardous jobs," and that he "would assume it would be up to the individual" as to whether to wear a hard hat in the engine room. (Id. at 61-62.) While it appears that Plaintiff was assigned to do her job in that particular location and, thus, had no choice but to walk underneath the piston removal work, and although Captain Apperson's statements are somewhat vague, they do at least raise a question of fact as to whether a reasonable person in Plaintiff's position would have worn a hard hat.

Specifically, knowing that a difficult process requiring a small crane was going on above her, there is at least a question of fact as to whether a reasonable person in Plaintiff's position would have worn one of the hard hats that were admittedly available to her. See Simeonoff, 249 F.3d at 889 (stating that "contributory negligence is proper if a seaman knowingly failed to choose an available safe method of doing his or her work" (internal quotation marks and citation omitted)); DuBose v. Matson Nav. Co., 403 F.2d 875, 879 (9th Cir. 1968) ("When a maritime worker continues to work under conditions known to be dangerous, he may be found to be contributorily negligent.").

The Court therefore concludes that there is at least a question of fact as to whether Plaintiff was contributorily negligent in failing to wear a hard hat at the time of the accident. The Court thus DENIES Plaintiff's Motion for Summary Judgment to the extent she seeks judgment as to the issue of contributory negligence.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Matson's Motion for Partial Summary Judgment, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS IN PART AND DENIES IN PART Matson's Motion to Strike.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 30, 2015

_____
Alan C. Kay
Senior United States District Judge

Burdett v. Matson, Civ. No. 13-00703 ACK-KSC, Order Granting Defendant's Motion for Partial Summary Judgment, Denying Plaintiff's Motion for Summary Judgment, and Granting in Part and Denying in Part Defendant's Motion to Strike.